22-16567. And I would like to say also, too, I just speak on my behalf, but I think that I know it's really scary to come to court. I remember my first time coming to court, and I think that as students, you would always be welcomed back as attorneys in our courtroom. So you did a good job, and that doesn't speak to the merits, but you presented yourself very professionally and were prepared. Thank you. Okay. All right. Each side has 15 minutes here. Good morning, Your Honors. Russell Davis for appellants. I'd like to reserve four minutes for rebuttal. If I do go over in my argument, just subtract it. I'm sorry. If you what? If I do go over in my argument, please subtract the time from my rebuttal. How long did you want to reserve for? Four minutes. Well, we'll see how it goes.  All right. Thank you very much. May it please the Court. We're here today because the City and County of San Francisco failed to give the appellants a reasonable accommodation for their religious beliefs. The District Court abused its discretion in denying a motion for a preliminary injunction and committed multiple errors of law and fact. I'd like to begin with the first one, reading directly from the order, quoting, there are no grounds upon which to assert the mistaken belief that the FDA-approved vaccines contain fetal cells or are otherwise derived from murdered babies. That's incorrect. In 1972 or 1973, Dr. Van der Erb removed the kidneys from an aborted baby girl. Those kidneys are the progenitor of the HEK 293 cell line, HEK standing for Human Embryonic Kidney 293. 293 times it didn't work. It finally got success on the 293rd time. The bottom line is the HEK 293 cell line, if it didn't exist, we wouldn't have the mRNA vaccines. I would like to read from defendants. Excuse me, Mr. Davis. If we adopt your broader definition of derived than the district judge did, one of the other four factors that we have to consider is irreparable harm. And what you have claimed is that your two clients have lost their careers and that they are having financial difficulties. And my question is, didn't they just lose a job, and there's no reason for us to believe they could not get another job in their field because in the past they had those jobs in their field before they went to work for San Francisco? Good question. And isn't it generally agreed that financial harm, that is I'm having financial difficulties because I lost my job, is not irreparable but reparable through monetary relief? Well, I agree with the court on that, but we didn't mention money at all in the briefs submitted to the district court. But also in this circuit, a violation of a civil rights statute is presumptively irreparable harm. And more to the point, there's no evidence to rebut that presumption. So we have established that. I don't think that argument was as developed as it could have been. The clients stated that there was a religious component. So I would agree with you that it's a different argument on irreparable harm if there's a constitutional violation. So the constitutional violation would have to be their religious freedom, the expression of their religious views. So let me ask you, generally, abuse of discretion is a very deferential standard. I think that anyone that does appellate work knows that. So basically, I might not do the same as someone else, another judge, but if the other judge has correctly applied the law, that makes a difference. But let's assume hypothetically that we agree with you that the district court was too narrow and derived from, and possibly also that the district court apparently did not think your clients had a sincere religious belief. In looking at the cases, let's assume that maybe the district court was too stringent They did say that it was the religious belief. So if that error was made, if in fact that makes a prima facie case under Title VII and you look at irreparable harm differently, what would the remedy be? Would it be to send it back to the district court and say, you made these errors of law, now look at the preliminary injunction again and evaluate it in terms of without making the same errors. Is that the remedy? I mean, I'm wondering, are you asking this court to issue the preliminary injunction? That would be the best of all possible worlds. I know, but what would be the authority for that? If we agree with you that there were errors of law that perhaps affected the analysis, wouldn't it be reverse and remand, tell the district court what the errors are and say look at it under the correct lens? Yes, I believe that's the appropriate remedy. What type of injunctive relief are you seeking? Do they want their jobs back? They want their careers back, yes. That's the relief requested. You said they want their careers back, and I think Judge Bumate asked if they want their jobs back. Not the same thing. I make a distinction between jobs and career. A job is something you do for money. Career is much more expansive. That's why I'm using the word career on purpose. And, yes, the remedy would be restoration of my clients to their former careers. It seems like you're also making the argument that the irreparable harm is the fact that they have to choose between following their religious convictions and maintaining their job, right? Yes, Your Honor. The irreparable harm is the fact that they were forced to walk away from their careers in order to maintain their faith. But what's the evidence that they walked away from their careers as opposed to retired from their jobs with the city of San Francisco? Well, that gets back to the Prima Fascia case. They had a belief that conflicted with the employer mandate. They informed the employer. I'm going to assume that they – I'm back on irreparable harm. Okay. I'm going to assume that they chose their faith over their positions with the city of San Francisco. Yes. You say they lost their careers. What is the evidence that they lost their careers as opposed to just that position? Well, Your Honor. Why can't they go get a job in their field someplace else? I think that's where you're going with this. That is exactly. The bottom line is my clients are 63 and 59. They're very unlikely to be able to be similarly situated in their career. But did you present any evidence in support of your preliminary injunction that they effectively lost any career they could have in the future? I mean, the analogy I was thinking is you're a lawyer. If you had an employer who asked you to do something that you wouldn't do, you could resign or take early retirement and you could go continue to be a lawyer unless there was evidence that you couldn't. And I don't see, other than you're arguing in your brief that they lost their careers, that there's any evidence that they lost their careers, that they can continue to pursue their careers with a different employer. If you make that assumption, then you're correct, Your Honor. I'm not making the assumption. I'm asking you didn't you have to present if the loss of a career as opposed to the loss of a mere job for money is an irreparable harm,  as opposed to just arguing it? Other than the ageist argument, I would say you're correct. But did you ever make the ageist argument before I just asked you the question? No, I did not. I did not. So you simply argued they lost their careers but never presented anything to the district court to suggest that they lost their careers. You just basically said it was irrational of the city and county of San Francisco to have a vaccine mandate for the reasons that you expressed concern in the efficacy of a vaccine and natural immunity. I did in the beginning of the argument, yes. But I think we have to be very specific as to the facts in this case. My clients want their careers or jobs, if you will, back at the city and county of San Francisco. But if it's just a job, why is it irreparable? I don't think it's just a job. There's no other evidence. Assume that you didn't put evidence. You just argued now that they lost their careers as opposed to a job. Is the loss of a job irreparable? Not in the case law. I think there was a Singh v. Berger in the D.C. Circuit that recently said that not having a career in the military is irreparable harm because of religious discrimination. Yes. There's also an unpublished decision in San Bruno which suggests the same thing. Well, now, I guess below, because the district court found that you hadn't established a prima facie case, the city did not put on any evidence of accommodations or anything along those lines. If this matter were to be returned to the district court, I don't know if the city did that for strategic reasons or whatever. Should the city have an opportunity to present evidence of that? Yes. My take on the city's failure to go forward under Title VII analysis is based on the fact they can't do it with a straight face. My clients were working for a year and a half remotely from April 2020 through the end of October 2021. There's no reason why that accommodation cannot be given to them again, considering that it would have no impact on the workers in San Francisco or the public, none whatsoever. It was a little frustrating to me that when I read that there was a request for an accommodation,  maybe answering two sets of questions, and then a denial of the accommodation. But none of that information is actually in the record. It is. Of the answers to the questions, what it was that they specifically were asking for as an accommodation. I don't know whether it was you on behalf of your clients or the city and county of San Francisco that should have told us what was going on in that Title VII. But no one did. We don't know what your clients said in response to those questions. And I don't know why that wasn't presented in support of the suggestion that it was irrational of the city and county not to grant them the accommodation. Well, that would be subject to discovery, Your Honor. Do you want to reserve the balance of your time? Just a very quick question. I'll continue here. Just a quick question. This morning in the Supreme Court there's Groff v. DeJoy that's on Title VII religious liberty claims. Do you have any position of when you should wait for that case to come out or not? I think the facts of that case are very different. The employer is saying that they can't accommodate Mr. Groff, and in this case the employer can accommodate my clients. Okay. So I take it we don't need to wait for that? I don't think so. Do you want to just save the balance of your time for rebuttal? Unless there are any further questions.  All right. Thank you very much. I'll give you the balance of your time for rebuttal. Thank you. Well, you shouldn't leave. You should sit at counsel table. Nice try on an escape, but there could be more questions. Good morning. Good morning. May it please the Court. I am Lauren Wood, a Deputy City Attorney with the San Francisco City Attorney's Office, here on behalf of the APALE, the City and County of San Francisco. Will you be doing all the arguing? Yes, I will. Okay. Yes, and this is my colleague Jim Emery, another Deputy City Attorney, who's on our brief. With the questions you asked of the appellant, you narrowed in on the key issue. The dispositive issue here is irreparable harm. And in terms of all of the arguments that the appellants have advanced, that is the one issue they've been the most creative with, because this is the one that they cannot surmount. Well, let me ask you this, though. It seems to me, and I think that there's a – it's certainly not a frivolous argument about that we really – that we may not and do not question the legitimacy of appellants' religious beliefs regarding COVID-19 vaccinations impact our analysis. The Court was very – just basically said, well, I don't – you know, I don't think you have any religious beliefs. And so, you know, then – and I don't think the case law allows courts – I think that it would appear that the court would then get into analysis, well, okay, you say you're Catholic. Let me see your schedule of going to mass. Well, you're not really a very good Catholic if you don't go to mass very often, and therefore, you couldn't really have – you couldn't have religious beliefs. And so I think that there's a very non-frivolous argument as to what the court did there, and that it was error. And if, in fact, that was error, you can show irreparable harm if your religious liberties are infringed upon, if you have a constitutional infringement there. Can you not? So in this circumstance, no. So first, I think we need to, you know, remain focused on the level of review. We're looking at whether – Well, but do you think that the district court – I mean, don't you think that there's a question of whether the district court went too far in requiring them to establish the sincere religious beliefs? So under Title VII, they are required to show that they have a bona fide religious belief that conflicts with an employment policy. On the scant record that the appellants put before the district court, he was well within his discretion to find that they were unlikely to prove the elements of their claim to succeed on the merits. Did you actually challenge the sincerity? Or did the district judge just find that there was no prima facie showing of that? So in the lower court, the motion for preliminary injunction was focused on the irrationality of the city's vaccination policy because of arguments that it's not really a vaccine. The FDA or CDC were changing the definition of it. This is a treatment. It's irrationally applied to the appellants because they both have had prior COVID infection and have natural immunity. In their declarations that they submitted – and they submitted nothing regarding the interactive process or their exemption request forms, which they should have had in their possession. Instead, they put just a line or two in their declaration saying, I will not take a vaccine derived from murdered children. That was the evidence. The argument in their brief in the opening motion never mentioned Title VII. It said they faced a Hobson's choice of lose their faith or lose their job. And beyond that, all of the argument was on do COVID vaccines work? They included a declaration from a physician that I presume they will want to use as an expert that was dozens of pages long arguing about whether or not the vaccine policy is rational. And so the city, in responding to the motion, responded to the arguments and the evidence put forth. And there was a complete disregard of Title VII and the burden. And so the city put in evidence showing the rationality of the policy and the discretion they have as a public entity and an employer to safeguard their employees. And so the record, as I believe Judge Bolton, you noted, that the record on appeal doesn't answer all these questions. And that's because the motion that was made before Judge White is fundamentally different than what is being argued on appeal. But that's what Judge White's order is all about is the sincerity of their beliefs and whether or not, you know, and I think that's clearly wrong. I wouldn't characterize his order as all about that. Well, it was on the likelihood of success on the merits. He said that they haven't proven that. And I think that's based off of some factual error, probably some legal error as well. So I would disagree because if you look at what they presented to the court, they have just this one line about the vaccines being derived from murdered children, which Judge White is correct in. He cited to public health guidance that discusses the mRNA vaccines and how the fetal cell lines were only used in early proof-of-concept testing, not in the manufacturer or production lines, which I would say, as we've advanced in our brief, that derived has to have some type of – for a vaccine that is not used in the production process, you cannot say it is derived from fetal cell lines. So that's one. But two, he quoted Supreme Court jurisprudence in his order that says you cannot have a religious belief that's not the same as a personal one no matter how passionate you are. The arguments that they passionately put forward were their views about natural immunity and their rationality of the COVID vaccine. They did nothing to actually show they had a sincere belief. So your own evidence that the city put on said that early in the development of mRNA vaccine technology, fetal cells were used for proof-of-concept to demonstrate how cells could take up mRNA and produce the SARS-CoV-2 spike protein. Isn't that derived? I would say it's not. That's proof-of-concept testing of the technology itself, this type of – an mRNA vaccine, this type of actual technology. For Pfizer and Moderna, they did not use any fetal cell lines in their actual production and manufacturing of the vaccines that are out on the market and available. I would say it's too attenuated to call it derived. But couldn't someone have – I'm sorry. I'm just – it seems that that's a religious question, whether or not that's too attenuated or not, and we shouldn't be asking that. That was the same question I was going to ask. Well, I mean, I do think these are very interesting issues that a lot of courts are going to be grappling with because when we've had religious accommodation, jurisprudence has been very different before COVID. It's often focused on something like some of the cases that appellants cite in reply. You know, I am of the Jewish faith. I need to go to my wife's conversion ceremony. I mean, those are things that you can very easily take at face value. And I would say we'd all agree the COVID situation is different. But here's the issue that we have today. It's not we need to decide how far a judge or a court can go into delving in sincerity, and especially not on a record such as we have here. What we need to decide is did they meet the high standard for a preliminary injunction? Have they done that? Okay, but the way that that doesn't, the way the cloak gets torn away is when there are legal errors. And so just assume for hypothetically, because we haven't conferenced on the case, but let's just assume based on the questions, let's assume that the panel thinks that the court got it wrong on derived from, that the court got it wrong on sincere belief. Then isn't that enough legal error to call into question the evaluation of irreparable harm and the likelihood of success to reverse and remand and say, look, there was a prima facie case here. You need to not make those legal errors and evaluate it with the right lens. Actually, I don't think it is. As we cited in our brief, there's numerous courts across the country that have looked at preliminary injunctions for COVID-19 vaccine mandates. And many courts, when they're going through their analysis, like I think it's the Hale-Penn case from the District of Hawaii, they will assume that you can prove a likelihood of success on the merits. And the Together employees versus Mass General Brigham, which has gone up to the First Circuit, went to the Supreme Court for a denial of an injunction pending appeal, has honed in on irreparable harm as the issue that matters. And quite frankly, the case law they're citing for stating that constitutional When you get it wrong and you start questioning people about their sincere religious beliefs, the case law has become a lot more salient on you can't do that. And it seems to me that this court just decided,  And I'm not going to give you that. And I'm having a hard time seeing how that doesn't infect the rest of the analysis. I don't think that he said that you're not sincere enough. It is that they haven't advanced a belief that is in conflict with the city policy because the city was not mandating employees to take a vaccine derived from murdered children, as they stated. And that was all they had on the record. Did they say anything in their declarations about their religion? What did they say about their religion? They both said exactly the same thing, that they are a Christian who believes in the sanctity of life, and that is it. We'll say that we don't have the full record. We'll go through discovery, and we'll look at what San Francisco did and look at the issue of accommodation as this case proceeds. But in the record, it was, for whatever reason, they chose to just put in this very brief statement about the murdered children believing in the sanctity of life and to focus on natural immunity. Well, didn't they say in their declarations in support of preliminary injunction that they chose to retire rather than take a COVID-19 vaccine enough to show that they hold a bona fide religious belief? So what more does an employee need to do? Well, I think if they were really grappling with this constitutional claim as they're trying to now recast their Title VII beliefs, then why didn't they move for a preliminary injunction before they left employment? They filed their lawsuit while they were still in an unpaid leave status and did not move for a preliminary injunction then. They chose then to retire, one at the very end of March, one on April 1st when an amnesty agreement between their union expired. Originally, employees were required to be vaccinated by November 1st, 2021. The appellants are members of Service Employees International Union, and they had an agreement between the city and the union that they could have additional time to decide all the way up until April 1st to get vaccinated. They had already filed a lawsuit by then. Instead, they sat and waited, chose to delay moving for a preliminary injunction until nearly two months after they retired. And so if there was really a constitutional harm that needed immediate remedy, that motion should have gone earlier. Well, now you're talking about the lawyering. It's like, okay, well, if there had been better lawyering, a lot of times we wouldn't be here, okay? But in terms of we have to look at what the court did and how the court analyzed the factors. Yes, and the court analyzed it correctly in line with the other courts who are looking at the issue of irreparable harm. They have lost their job. They chose to retire, even taking at face value that it was a difficult choice. They chose to retire. They can be fully compensated when this case is preceded on the merits in terms of money damages. We disagree with you and send it back. Should you be allowed to put on evidence of how you could or could not accommodate them? Absolutely. If this goes back and charges them. Well, you chose not to at that below previously, so why do you get another bite at the apple? Well, my understanding, I did not write the first brief, but is that the issue that was presented in that motion was completely attacking the rationality of the policy with respect to employees who have natural immunity. And I think this goes to Judge White looking at the entire record. It really makes it look like personal beliefs, very strong personal beliefs when the whole focus of your motion, your declaration, your evidence is on, I shouldn't have to take the COVID-19 vaccine. I have natural immunity. I had my medical exemption denied. And so absolutely if we're going to focus in. Well, they did throw the kitchen sink at it. I mean, there is talk about their religion. There is talk about being derived from, you know, as far as that goes. So it's not that it wasn't there. Well, I think if we're looking at a kitchen sink analogy, the sink was piled with pots and pans focusing on the vaccine and maybe we have one tiny spoon, a teaspoon, maybe that's on their religious beliefs. So I do think if it would be beneficial to the court if this is remanded to look at a more fulsome record, the city would absolutely be glad to put in all of the documentation on the interactive process. You know, that was not the motion that the city was opposing, and so it went forward in its limited, you know, page limits to focus on what was presented there and this whole notion that the policy itself was irrational as applied to them. So I agree with you that their hardest case is irreparable harm prong, but under our sliding factor test, it's very clear that likelihood of success in the merits is the strongest, is the most important factor. So do you agree that if we assume that we agree that they have a likelihood of success in the merits, isn't there a burden of proving irreparable harm diminished? No, actually, there's not. So post-winter, in this court's decision in alliance for the Wildlife Rockies case, it clarified what of the sliding scale approach remains post-winter, and we cited these cases in our brief. So post-winter, what remains is the serious question test where you can have a lesser showing of success on the merits and that if you show serious questions but a very sharp balance of equities in the plaintiff's favor, but you still must meet the other two winter factors, irreparable harm and public interest. Those always must be met. I am aware of no case law showing that sort of the flip side of that test where you could get irreparable harm to be presumed still stands, and in alliance for the Rockies, the court is very clear. Post-winter, irreparable harm must always be shown. Can I ask two more quick questions? Yes, go ahead. Are you familiar with Singh v. Berger, the D.C. Circuit case that came out relatively recently dealing with the military and whether or not they have to accommodate religious beliefs in the military? And that seems to say that either how you phrase it, a job or a career is irreparable harm. So I think that a career in the military is quite different than employees who worked for the human services agencies who in their declarations talk about how they like to help people. I mean, it's fundamentally different. If you no longer work in the military, unless you're going to immigrate to another country and be part of their military, I mean, it's just to me it's a fundamentally different thing. That's the distinction that the military is different than a regular civilian job? Yes, I would say absolutely. And as I can't recall which one of you pointed out in their declarations, they had done similar type of work with this fulfillment before coming to the city of San Francisco. Okay, just briefly, do you have a position on whether or not we need to wait for Graf versus DeJoy to come out? I don't know if you're familiar. That's a Supreme Court case being argued today. So I'm not familiar completely with the facts, but I do think that we're looking at a narrow issue here. It's abuse of discretion standard. I do feel irreparable harm is the dispositive issue that we wouldn't need to wait for that. The First Circuit, the Second Circuit have already looked at this issue of whether this loss of employment in this type of context, this specific context, should be a departure from the standard precedent, and it shouldn't. The things they're complaining of, they can all be remedied with money. There's no need to unring the bell, particularly here where they volunteered, and then they moved the injunction. Some of the other cases, for example, Together Friends, the mass— I think your time's expired. Oh, sorry. The question was on Graf. All right, do you have any further questions? One question. Go ahead. Opposing counsel said that in this circuit, the deprivation of a constitutional right is presumptively irreparable. Do you agree? No, that's wrong. And the cases that they cite, too, one is Smallwood, which is from 1978, and that case, I mean, I did a key sighting on West Lot. It's still technically a yellow flag, but I do not see any way that could survive Winter and the Alliance for the Rockies because it's very clear that reputable harm must always be shown. The other one, the Koguba case they did, is also from 1981. It's an unpublished decision. And I didn't see the Ninth Circuit weighing in on whether those are expressly overturned, but other district courts, I think they have sites if you want them, have come to the conclusion that Smallwood cannot stand post-Winter. I think the Northern District has found that. There's several unpublished decisions, at least, and I believe even the NYART versus National Conference of Bar Examiners, they cite to the Ninth Circuit case. The Northern District case involving that one also expressly found that. In that case, which was, I think, Title VII claims that irreparable harm has to be shown post-Winter. So, no, my position is, or the city's position is, that's no longer good law. All right, thank you for your argument. All right, Mr. Davis, you have a minute and 35 seconds. Opposing counsel referenced delay in filing. I want to point the court to the Lido Entertainment case v. City of Las Vegas, in which Lido Entertainment waited five years before they filed their motion for a preliminary injunction, and the court said they were loathe to make a decision based on delay only. As far as irreparable harm goes, we cited the Katooba v. Allstate case for the proposition that violation of a civil rights statute is presumptively irreparable harm. By the way, we never used the word derived in our brief at all. It doesn't appear, and any argument related to being derived from is simply not available. Any further questions? No, there do not appear to be any further questions. Submitted. Thank you, Your Honor. Thank you both for your argument in this matter. This case will stand submitted, and this court will be in recess until tomorrow at 9 a.m. All rise.
judges: CALLAHAN, BUMATAY, Bolton